(111 So. 773)

No. 26294.

## CANAL–COMMERCIAL TRUST & SAVINGS BANK v. McKEE.

(Feb. 28, 1927.)

*(Syllabus by Editorial Staff.)*

Garnishment ⬳164—Evidence held to show that garnishees were not indebted to defendant when writs were served.

Evidence *held* to show that garnishees were not indebted to defendant in any amount whatsoever when writs were served on them.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by the Canal Commercial Trust & Savings Bank against E. W. McKee, wherein the Hill-Cotton Lumber Company and another were served with garnishment process. A rule to traverse the answers of the garnishees was discharged, and plaintiff appeals. Affirmed.

Merrick & Schwarz, of New Orleans, for appellant.

Monroe & Lemann and Nicholas Callan, both of New Orleans, for garnishees.

ROGERS, J. Plaintiff, as the holder of three past-due promissory notes aggregating $10,191.83, brought suit to recover the amount due, and, upon allegation of the nonresidence of the defendant, obtained a writ of attachment with garnishment process. In answer to the interrogatories served upon them, the garnishees, Hill-Cotton Lumber Company, Inc., and Robert L. Hill, denied any indebtedness to the defendant. A rule to traverse the answers was filed, and, after a hearing, was discharged. Plaintiff then appealed from the judgment.

We do not find any error in the judgment complained of. The testimony of the witnesses and the books and records of the lumber company, which were produced in court in response to process invoked by plaintiff, affirmatively showed that neither of the garnishees was indebted to defendant in any amount whatsoever at the time the writs were served upon them.

The facts, as disclosed by the record, briefly stated, are: That defendant was a building contractor. In addition to taking contracts from others, he would purchase lots and build thereon for his own account. In the course of his business defendant became indebted to the Hill-Cotton Lumber Company, Inc., for lumber and other building material. Robert L. Hill was an officer of this company, and the owner of 98 per cent. of its stock. Some time in April, 1922, defendant called Hill's attention to three lots of ground on Olympia street, suggesting that Hill purchase the lots and build thereon. Hill acquired the lots, and later entered into an oral agreement with defendant, in which the latter undertook to build three small bungalows thereon, for $900 each; Hill agreeing

to furnish all the lumber required. At the time this agreement was made defendant owed the lumber company $3,500. The company, in turn, was indebted to Hill in a considerable amount. The situation was recognized by the parties, and it was specifically understood that the $2,700 which defendant was to charge for building the bungalows was to be paid by charging Hill's account, and crediting defendant's account, with the lumber company.. Hill testified that his purpose in acquiring the lots and building the houses was to make some money on them, and to enable the lumber company to collect in part what defendant owed it.

It also appears defendant represented to Hill that the houses, on completion, could be sold for $4,000 apiece, and that Hill, being willing to collect some of defendant's indebtedness to the lumber company, and being satisfied with a fair profit on his investment, informed defendant that, if he sold the property within a reasonable time for $10,000, he might have all over that amount for his trouble. Defendant, however, failed to complete the houses, and Hill was put to an expense of $300 in order to do so.

Subsequently it developed that defendant, falsely representing that he was the owner of the bungalows, agreed in writing with one Pelletier to sell said bungalows, together with two other bungalows on South Murat street, for $3,650 each. This agreement was entered into without the knowledge of Hill. Pelletier rented the houses, and Hill, being informed that they were occupied, made inquiries in regard thereto, when he learned for the first time that the occupants were paying rent to Pelletier. He immediately got in touch with Pelletier, and, after some negotiations, the latter agreed to purchase the properties for $10,000. An act of sale was executed by Hill to Pelletier, and the deal was completed. At the time of the issuance of the garnishment process the nec-

essary debits and credits growing out of the transaction between Hill and defendant had been entered upon the books of the lumber company. Notwithstanding this credit, defendant was still indebted to the lumber company in a large amount.

At the time of the execution of the agreement to sell defendant received $1,000 from Pelletier as a deposit to bind the sale. No credit for this amount was allowed Pelletier by Hill, who received the full purchase price of $10,000 for the properties.

Shortly after the agreement was entered into, defendant addressed a letter to Pelletier, in which he directed the prospective purchaser to turn over to the plaintiff bank $9,900, the balance due the writer on the purchase price of the houses on Olympia street, when the title to the property was transferred, said amount to be credited to his account by the bank. Mainly because of the representations of this letter plaintiff argues that the title to the three lots were put in Hill's name for security only, and that Hill, for his own convenience, and for purposes of his own, appropriated money which should have gone to pay the bank for its advances to defendant. The argument is refuted by the direct and positive evidence in the record. Moreover, just what connection the letter has with the notes held by plaintiff is not shown. The letter is dated July 3, 1922, whereas the three notes sued on were executed subsequent to that date, viz. on August 23, August 28, and September 13, 1922. And, in any event, if defendant found it to his interest to mislead the bank, his act cannot be charged to the garnishees; since neither Hill nor the lumber company had any knowledge of such a letter until the negotiations were had between Hill and Pelletier for the sale of the properties, nor were the representations contained in the letter binding upon Hill, since he, and not the defendant, owned the properties.

Plaintiff complains that the answers of the garnishees are evasive and misstate the facts. There is no basis for the complaint. Each interrogatory propounded to the respective garnishees was categorically denied. There was no misstatement of fact, and we think the answers were sufficient.

The district judge held that there was no charge of fraud, and he found that in the various transactions inquired about the garnishees only followed the usual course of business without suspicion of fraud or falsehood. In this we think he was correct, and we agree with the further statement contained in his reasons for judgment that "it is unfortunate that the plaintiff has been deceived, but that is no reason why the loss in the case should be shifted to other shoulders."

For the reasons assigned, the judgment appealed from is affirmed, at appellant's cost.